Filed 7/9/26  P. v. Aston CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PATRICK ASTON,<br><br>    Defendant and Appellant. | D085365<br><br><br>(Super. Ct. Nos.<br> SCD223882, SCD244270) |

APPEAL from an order of the Superior Court of San Diego, Eugenia Eyherabide, Judge.  Affirmed.


Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Senior Assistant Attorney General, Stephanie H. Chow and Elana Miller, Deputy Attorneys General for the Plaintiff and Respondent.

In February 2011, Patrick Aston pleaded guilty (case No. SCD223882) to four counts of first degree residential burglary (Pen. Code,[1] §§ 459, 460), and admitted allegations that a person was present in the residence during one burglary's commission (§ 667.5, subd. (c)(21)).  He also admitted he had six prior prison convictions (§§ 667.5, subd. (b), 668) and one strike prior conviction (§§ 667, subds. (b)-(i), 1170.12, 668).  The court sentenced him to a 13-year state prison term.[2]  About two and a half years later in August 2013, Aston pleaded guilty (case No. SCD244270) to solicitation for murder (§ 653f, subd. (b)) and admitted allegations that he intended to cause great bodily injury (§ 667, subd. (e)(2)(c)(iii)) and had suffered a prior strike conviction (§ 667, subds. (b)-(i)).  Under his plea, Aston stipulated to a 12-year term (a 6-year midterm, doubled) to run consecutively with his 13-year term in case No. SCD223882.

The court in 2014 sentenced Aston in case No. SCD244270 accordingly.  It resentenced him in case No. SCD223882 to two years eight months (one-third the midterm, doubled) on count 2, plus one year four months (one-third the midterm) on each of counts 1, 3, and 4, and a consecutive five years for the serious felony prior (§ 667, subd. (a)(1)).  His total term was 23 years eight months.

In 2019, the Secretary of the Department of Corrections and Rehabilitation (the Department), acknowledging newfound authority to strike a consecutive section 667, subdivision (a)(1) enhancement,

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     That term consisted of four years (the low term of two years doubled) on count 2 and a consecutive eight months for each of counts 1, 3 and 4 plus one year for the prior prison term.  The court struck the prior strikes for counts 1, 3, and 4.

recommended the court recall Aston's sentence and resentence him under former section 1170, subdivision (d) (now section 1172.1). The court declined to recall and impose a different sentence. (*People v. Aston* (Jul. 25, 2024, D081963 [nonpub. opn.].) On Aston's appeal, this court reversed and directed the court to exercise its discretion to determine whether to strike the prior serious felony enhancements under sections 667, subdivision (a)(1) and 1385. (*Ibid.*) On remand, the court again declined to recall and resentence Aston, finding he poses an unreasonable risk of danger to public safety.

In this appeal, Aston contends the court abused its discretion by its order. Specifically, he argues the court failed to follow the statutory structure, accord weight to the Department's recommendation, and apply the statutory presumption for recall and resentencing set forth in section 1172.1 subdivision (b)(2). He contends the record lacks substantial evidence to support the court's finding that he currently poses an unreasonable risk of danger to public safety. He further contends the court abused its discretion by refusing to strike his serious felony prior conviction enhancement (§ 667, subd. (a)(1)) under section 1385, subdivision (c)(2); that the court erred by failing to make findings that dismissing the enhancement would endanger public safety, relying on Aston's prior solicitation-of-murder conviction, and failing to consider mitigating factors set out in section 1385, subdivision (c)(2)(A)-(F). We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

*Aston's Offenses*[3]

### Case No. SCD223882

In July 2009, R.M.'s wallet went missing after he had placed it on a workbench in his garage. Days later, while looking for his wallet, he realized two bags of golf clubs were also missing. R.M. contacted his bank and learned that someone had tried several times to use his debit card to purchase gas.

Several days later, R.C. found his camera missing after he left it in his car, which he had parked in his garage. Police later determined Aston, who was on parole at the time, had pawned the camera.

In September 2009, J.B. parked her car in her garage and left the garage door open with her designer purse on the front passenger seat. About a half hour later, her husband heard noises from the car and saw Aston running away with something in his hand, enter a BMW vehicle and drive away.

In October 2009, C.R. saw Aston crouching down next to the passenger side of her car parked in her garage. Aston screamed that she had scared him and claimed he was looking for his dog, describing it and giving her a phone number to call if she found it. Aston then left in a BMW vehicle. C.R. felt Aston was using the lost dog story as a ruse for casing houses.

### Case No. SCD244270

In approximately 2009, during Aston's incarceration, he discussed with another inmate a plan to kill his stepfather, S.T. and S.T.'s family. Aston told the inmate his stepfather owned a business worth $100 million and kept

---

3     We state the facts of the underlying offenses from Aston's probation reports.

4

valuable jewelry in his home, which would be the inmate's payment for killing the family. According to the inmate, who happened to be a confidential informant, Aston's original plan was that upon his release, he would gather specific information such as his stepfather's address and give it to the inmate, and that Aston wanted to coordinate the timing so he would be out of custody and on vacation when the murders were committed. Aston described specific pieces of jewelry and a watch that he would give to the inmate. Aston told the inmate he would need a good alibi because the remaining family members would suspect him.

The inmate lost contact with Aston in 2009 when Aston was released from custody, but became cellmates again with him in 2011. In 2011, Aston related to him details about the location and description of S.T.'s primary residence, S.T. and his family's whereabouts, and the locations of other family homes. They eventually discussed a new plan in which Aston would give the inmate S.T.'s exact residence and business addresses so the inmate could follow him from the business to the residence. Aston described S.T.'s height and weight and possible vehicles, as well as their personalized license plates. Aston handwrote a floor plan of S.T.'s residence, and told the inmate to copy it into his own writing in case something happened, so Aston would not be connected to the crime.

Aston also gave the inmate details about the residence door locks, described how the inmate could gain access to the residence and its backyard, and where to park. He described portions of the home to the inmate, and told him how many children there were. Aston left the details of the job up to the inmate, but told him he wanted the family killed because that was the only way to get all of the jewelry out of the house. Aston gave the inmate the alarm code for another home owned by S.T., and told him which house would

5

be easier to access. He told the inmate about another occupant and the family dog, but that he would give the dog's name to the inmate once he was out of custody.

*Aston's Motion for Resentencing*

Following this court's remand, Aston in November 2024 filed a motion for resentencing under section 1172.1. In part, he argued that while he had suffered a super strike conviction, the act occurred over a decade ago, and he was listed in the lowest security group in the Department. He argued there was no evidence to overcome the presumption in favor of recall and resentencing under section 1172.1, which would occur only if the court found he was an unreasonable risk of danger to public safety within the meaning of subdivision (c) of section 1170.18, that is, a risk that the person will commit a new "super strike." Aston pointed to the fact he had completed several programs to prepare him for successful reentry into the community, had completed community college courses, and had no prison rule violations involving violence. He argued the passage of time and his age reduced his risk for future violence. He argued his continued incarceration was no longer in the interest of justice. Aston asked the court if it opted to resentence him to exercise its discretion under section 1385 to dismiss his enhancements and strike his prior serious felony conviction.

The People opposed the request. They argued Aston's criminal history, and particularly the fact he made very detailed plans for the murder of S.T. and his family, demonstrated he was an unreasonable risk of danger to public safety. The People submitted a victim statement from S.T., in which he described drastic changes he had made to his life and the stress he experienced as a result of Aston's solicitation offense. S.T. related that in June 2018, Aston had "obtained a cell phone in prison and began calling my

6

office trying to find out if I was there or when I would be their [*sic*] type of information." He stated he did not know what Aston intended to do with the information, but believed it could not be "anything good." S.T. filed a formal complaint and requested that Aston cease all forms of further communication. The People also pointed to Aston's 19 rule violations in custody beginning from the end of 2000, the last of which most recently occurred in June 2024. They argued Aston came close to committing super strikes during his 2009 residential burglaries, and then committed a super strike in 2011, when he plotted the death of S.T. and his family. The People argued that given resentencing objectives, and the fact the circumstances in aggravation outweighed those in mitigation, Aston's current sentence, including its enhancements and imposition of a strike, remained the proper sentence. According to the People, striking Aston's strikes would not be in furtherance of justice.

*Court's Ruling*

The court conducted a hearing on the matter in November 2024. It stated at the outset that it had read and considered all of the parties' papers. Aston's attorney began by pointing out that the 2019 Department letter made exceptional conduct recommendations, which were based on an inmate staying out of serious trouble and completing programs allowing him to evolve and lower his recidivism risk. Counsel then stated: "So, your Honor, there is a legislative initiative after 2019 that creates a presumption that where the path to resentencing is this letter from [the Department] [*sic*]. There's a presumption in favor of recall and resentencing unless the Court can find that the individual is [an] unreasonable risk of danger to public safety. [¶] And what that means in this context is that it is a risk that that person will commit a new super strike." Counsel pointed to the fact Aston's

7

super strike had occurred more than ten years ago, as well as his completion of programs, college classes and efforts to reform. Counsel argued that the Department did not view him as a risk during the past five years since it had sent its letter. Aston's counsel argued that nothing in Aston's correctional disciplinary history—which reflected minor violations—indicated he currently posed a danger to public safety. Counsel further pointed out that Aston qualified for section 1385 relief given an enhancement resulted in his over-20-year sentence, and Aston's documented history of prior victimization or childhood trauma.

The prosecutor pointed out that the Department's letter merely invited the court to consider recalling Aston's sentence; it did not tell the court to release him or that the Department was saying he would not commit a super strike. Summarizing Aston's criminal history before the present offenses, the prosecutor stated that Aston's super strike was not "just [an] aberration, it was a whole lifetime of behavior." He argued recall was inappropriate because Aston was a "current, unreasonable risk of danger to the community, which translates into unreasonable risk to commit a super strike." The prosecutor argued as to Aston's request under section 1385 that "you're looking at does it endanger public safety to dismiss those things" and argued there was a current risk to public safety concerning S.T. and his family if Aston was sentenced to a lower term. He asked the court to not recall the sentence, but if it decided recall was appropriate to reimpose the original sentence.

Ultimately, the court denied Aston's request. It stated at the outset: "I know there's many things that I have to consider, and I will put on the record that I am considering them." The court explained it did not give a lot of weight to the Department letter, which was a "standard letter" without

saying "anything specific in terms of why [you] don't pose [an] unreasonable risk." It acknowledged that the Department sent the letter in 2019, but "[t]he law has changed . . . ." The court commended Aston on his classes and drug treatment and explained it did not give "much weight" to his prison disciplinary actions, which it acknowledged were "not that bad." But the court found the facts of his solicitation offense "egregious" and "quite scary," and considered the fact that Aston in 2018 began calling S.T.'s office to find his location. Observing Aston's solicitation offense had been orchestrated from prison, the court found he presented an unreasonable risk of danger to public safety, particularly to S.T. Specifically, it found there was an unreasonable risk Aston would commit a violent felony within the meaning of section 667 and "potentially another solicitation for murder, especially since [he] reached out to [S.T.] all these years later." The court exercised its discretion to deny Aston's request to strike his serious felony prior conviction under section 1385.

Aston appeals.

## DISCUSSION

### I. *Legal Principles and Standard of Review*

Section 1172.1 gives a trial court authority to recall a sentence and resentence a defendant upon the Department's recommendation. It is "a statutory exception to the general rule that a trial court lacks jurisdiction to modify a sentence after judgment is rendered and execution of the sentence has begun." (*People v. Brinson* (2025) 112 Cal.App.5th 1040, 1045; see also *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040 [Department recommendation is " 'an invitation to the court to exercise its equitable jurisdiction' "].)

9

Section 1172.1, subdivision (a)(1) provides in part: "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department . . . , the court may, . . . at any time upon the recommendation of the secretary . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence."

Subdivision (a)(5) of section 1172.1 sets out postconviction factors that a court "shall consider" in recalling and resentencing a defendant. These "includ[e], but [are] not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. Evidence that the defendant's incarceration is no longer in the interest of justice includes, but is not limited to, evidence that the defendant's constitutional rights were violated in the proceedings related to the conviction or sentence at issue, and any other evidence that undermines the integrity of the underlying conviction or sentence. The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, . . . and whether those circumstances were a contributing factor in the commission of the offense."

The statute provides that if the Department requests resentencing, "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant

10

currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).) An "unreasonable risk of danger to public safety" means "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The referenced subdivision "identifies eight types of particularly serious or violent felonies, known colloquially as 'super strikes.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 351.) The list includes solicitation to commit murder as defined in section 653f. (*Id*. at p. 351, fn. 3; § 667, subd. (e)(2)(C)(iv)(V).)

We review for abuse of discretion the trial court's decision to decline the Department's recommendation to recall and resentence a defendant under section 1172.1. (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082; *People v. Frazier* (2020) 55 Cal.App.5th 858, 863 [applying section 1172.1's predecessor], superseded by statute on other grounds as stated in *People v. McMurray*, *supra*, 76 Cal.App.5th at p. 1041.) Under this standard, "we presume the order is correct, indulge all intendments and presumptions to support it on matters as to which the record is silent, and [Aston] bears the burden to affirmatively show error." (*People v. Allen* (2019) 41 Cal.App.5th 312, 330.) To meet this burden, Aston "must establish the court 'act[ed] while unaware of the scope of its discretion' [citation], 'considered impermissible factors' [citation], or made a choice 'so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Olea* (2025) 115 Cal.App.5th 889, 902-903.)

## II. *Order Denying Recall*

Aston contends the trial court abused its sentencing discretion by failing to apply the presumption favoring recall and resentencing and by

11

finding that he posed an unreasonable risk of committing a new super strike without evidentiary support.  He argues the record is ambiguous whether the court was aware of the statutory presumption, as the court did not mention it.  Aston maintains that while the court considered post-conviction factors, it gave them little importance, even though according to Aston they demonstrate his commitment to rehabilitation and that he is not an unreasonable risk to public safety given his age, time served and passage of time since he committed his crimes, and the opinion of a program facilitator that he was not likely to repeat his past behaviors.  He points to the court's remarks concerning the Department's letter, characterizing it as a "misapprehension of the law" and the record as showing the court gave "no weight to [the Department's] recommendation, the statutory presumption, or relevant statutory factors, and instead based its findings on less than the preponderance of the evidence."

In assessing these contentions under the relevant review standard, we emphasize that reversal is not required simply because reasonable minds would reach a different conclusion based on the evidence.  (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310 [addressing motion to strike prior convictions].)  " ' " 'A merely debatable ruling cannot be deemed an abuse of discretion.' " ' " (*People v. Johnson* (2022) 12 Cal.5th 544, 605.)  "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*Myers*, at p. 310.)  The "court is presumed to have considered all relevant factors in the absence of an affirmative record to the contrary." (*Ibid*.)

Applying these standards, we reject Aston's arguments. First, the trial court expressly stated it was considering all factors it was required to consider, which reasonably means the various postconviction factors delineated in section 1172.1. We do not interpret the court's remarks concerning the Department's letter as ignoring or refusing to apply the statutory presumption in favor of recall and resentencing, particularly where the parties briefed the presumption and the court acknowledged that the law had changed since 2019. Aston mischaracterizes the record when he argues the court gave the letter "no weight," and "no consideration" to evidence that he was physically abused by his stepfather. The fact the court bases explanatory comments on only one or some factors does not mean that it considered only that factor. (*People v. Allen*, *supra*, 41 Cal.App.5th at p. 330.) But here, the court expressly stated it had considered all required factors. In the absence of record evidence to the contrary, not present here, we presume it knew the applicable law and followed it. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398; *People v. Neilsen* (2026) 119 Cal.App.5th 816, 829.)

It is true Aston's criminal conduct took place years ago and Aston has taken steps since then toward his personal reform and rehabilitation. But his solicitation offense, a super strike, is extraordinarily serious. The court reasonably assessed in its current risk analysis the fact that approximately nine years after he solicited the inmate to murder S.T., Aston called S.T.'s office seemingly to learn his whereabouts. That act suggests Aston still harbors the hatred that led him to solicit the murder of S.T. and his children. That a trier of fact could reasonably draw different conclusions about the reason or nature of the call is irrelevant. While the court recognized Aston's record of rehabilitation was laudatory, it reasonably concluded based on the

13

seriousness of his conduct and actions years after the offenses that he remained an unreasonable risk of danger to public safety, particularly to S.T. We conclude Aston has not demonstrated the court abused its sentencing discretion in declining to recall and resentence him.

### III.  *Section 1385 Ruling*

Under section 1385, a court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1); *People v. Walker* (2024) 16 Cal.5th 1024, 1032.)  The statute provides that "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2); see *People v. Torres* (2025) 113 Cal.App.5th 88, 92.)[4]  The statutory language does not mean trial courts are to rebuttably presume an enhancement must be dismissed in furtherance of justice unless the court makes a finding the resultingly short sentence would endanger public safety.  (*People v. Walker*, *supra*, 16 Cal.5th at p. 1032; see also *id*. at p, 1033 ["the plain language of section 1385, subdivision (c)(2) does not erect a rebuttable presumption in

---

[4]  One mitigating circumstance is that "[t]he application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(C).)  Another is the use of a conviction that is over five years old as the basis for the enhancement.  (§ 1385, subd. (c)(2)(H).)

favor of dismissal that can only be overcome by a finding that dismissal endangers public safety"].) "Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Id*. at p. 1033.) "[I]n most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Ibid*.) We review the court's decision under section 1385 for abuse of discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

Maintaining the court failed to make a finding that dismissal of his five-year serious prior felony conviction enhancement would endanger public safety, Aston contends the court abused its discretion by declining to strike it. In part, he argues that even if the court had made such a finding, it would be unsupported by the record. The People respond that Aston forfeited issues about the court's reasoning or findings by failing to object at the hearing, but the arguments are without merit in any event because the court was not required to make an on-the-record statement of reasons, the court was aware of its discretion based on the parties' briefing and arguments, and it presumably rejected Aston's arguments based on its finding from its section 1172.1 analysis.

With regard to the asserted absence of findings or the court's unclear reasoning, we agree with the People that Aston forfeited the contention by failing to object at the hearing. (See, e.g., *People v. Smith* (2001) 24 Cal.4th 849, 852 [with limited exceptions, " 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for

15

the first time on appeal are not subject to review"]; *People v. Anderson* (2023) 88 Cal.App.5th 233, 242 [defendant forfeited argument that court erred by failing to articulate reasons for imposing an upper term sentence under amended section 1170].)

In any event, section 1385 does not require the court to state reasons when it declines to dismiss an enhancement. (*In re Coley* (2012) 55 Cal.4th 524, 560 [section 1385 does not require "an on-the-record statement of reasons when a court declines to strike a prior" conviction]; *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157.) As stated, "[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see also *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905; *People v. Bravo*, at p. 1157.) We apply this presumption here, particularly where the parties briefed section 1385 and Aston's counsel specifically addressed the applicable mitigating factors. We conclude given its reference to Aston's solicitation offense and its prior finding that Aston presented an unreasonable risk of danger to public safety with respect to section 1172.1, that it concluded implicitly that dismissal of the five-year enhancement—and the concomitant lesser sentence—"would result in . . . serious danger to others." (§ 1385, subd. (c)(2).) Because as discussed above, the record contains substantial evidence to support such a finding, Aston has not established the court abused its wide discretion by declining to strike the enhancement under section 1385.

Because the court implicitly found dismissal of the enhancement would endanger public safety, it was not required to consider the mitigating factors in section 1385, subdivision (c)(2). (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 297.)

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.